1  Silvestre A. Fontes
   Thomas J. Rappaport
2  David H. London
   Attorneys for Plaintiff U.S. Securities and Exchange Commission
3  33 Arch Street, 23rd Floor
   Boston, MA 02110
4  617-573-8991 (Fontes)
   617-573-4590 (Fax)
5  fontess@sec.gov
   rappaportt@sec.gov
6  londond@sec.gov

7                       UNITED STATES DISTRICT COURT

8                            DISTRICT OF NEVADA

9

10

11  SECURITIES AND EXCHANGE
    COMMISSION,

12              Plaintiff,

13         v.

                                          Case No.   CV-S-05-0531-PMP-GWF
14  EXOTICS.COM, INC., L. REX ANDERSEN,
    MARLIN R. BRINSKY, DANIEL G.
15  CHAPMAN, STEPHEN P. CORSO, JR.,
    BARRY F. DUGGAN, JAMES L.
16  ERICKSTEEN, SEAN P. FLANAGAN, FIROZ
    JINNAH, INGO W. MUELLER, BRIAN K.
17  RABINOVITZ, EDWARD JAMES WEXLER,
    GARY THOMAS a/k/a GARY THOMAS
18  VOJTESAK,

19              Defendants,
          and
20
    FLANAGAN & ASSOCIATES, LTD.,
21
                Relief Defendant.
22

23  **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S RESPONSE TO
    DEFENDANT CHAPMAN'S MOTION TO COMPEL RESPONSES TO DISCOVERY**
24

25        On August 17, 2009, Defendant Daniel G. Chapman ("Chapman") filed a Motion to

26  Compel Responses to Discovery Requests ("Motion") (Doc. No. 179) seeking that the Court

27  order Plaintiff Securities and Exchange Commission ("Commission") to respond to certain of

28

Defendant Chapman's discovery requests.  On August 25, 2009, Defendant Sean P. Flanagan

("Flanagan") filed a "Joinder to Daniel G. Chapman's Motion to Compel By Sean P. Flanagan"

("Flanagan Joinder") (Doc. No. 182).[1]

Given that the Commission has, to date, fully complied with all its discovery obligations,

including in responding to Defendant Chapman's discovery requests, the Commission

respectfully requests that the Motion be denied.  In addition, the Commission hereby respectfully

moves for sanctions against Defendants Chapman and Flanagan for:  (a) issuance of the discovery

requests that are the subject of the Motion and/or (b) filing (or joining in) the Motion.  The

Commission respectfully requests that it be reimbursed for costs incurred in responding to the

Motion.  As further discussed below, the discovery requests were issued, and the Motion filed,

solely with the goal of harassing and distracting the Commission from the prosecution of this

matter.

## PROCEDURAL BACKGROUND[2]

The Commission filed this action on April 25, 2005 against thirteen defendants alleging

they participated in an accounting and stock manipulation scheme related to Exotics.com, Inc., a

publicly-traded Nevada corporation, between 1999 and 2002.  Specifically, Defendants Chapman

and Flanagan are two of eight defendants charged with engaging in (or, alternatively, in aiding

and abetting) the manipulation scheme.  On September 1, 2005, Defendant Chapman filed a

motion to stay this action as a result of unrelated criminal charges then pending against him.  On

September 13, 2005, Defendant Flanagan joined in Chapman's motion for a stay.  The

---

[1]  Since there are no legal or factual arguments made in the Flanagan Joinder, all
arguments herein are directed to the Chapman Motion.  However, the Commission respectfully
requests that this filing also be treated, and considered, as the opposition to the Flanagan Joinder.

[2]  This background only covers developments related to Defendants Chapman and
Flanagan, the movants.

1   Commission opposed Defendants' stay motion.  That motion was granted on October 28, 2005.

2   On April 4, 2008, the Commission moved to lift the stay then pending against Defendants

3   Chapman and Flanagan.  Defendants Chapman and Flanagan both opposed the Commission's

4   motion.  Nonetheless, on May 19, 2008, the Court ruled in favor of the Commission and lifted the

5   stay, effective as of June 16, 2008.

6

7          On June 23, 2008, Defendants Chapman and Flanagan finally responded to the

8   Commission's Complaint by jointly moving that it be dismissed, principally on the ground that it

9   failed to plead fraud with the level of particularity required by Federal Rule of Civil Procedure

10  9(b).  The Commission opposed the motion and, after oral argument on August 19, 2008, the

11  Court that same day denied the joint motion to dismiss.  On September 15, 2008, Defendants

12  Chapman and Flanagan separately answered the Complaint, denying all of the substantive

13  allegations therein.

14

15         Despite answering the Complaint, on October 17, 2008, Defendants Chapman and

16  Flanagan jointly filed a Notice of Appeal, noting they were taking an appeal to the Court of

17  Appeals for the Ninth Circuit on the denial of their joint motion to dismiss the Complaint.  On

18  December 22, 2008, the Commission moved the Ninth Circuit to dismiss the appeal for lack of

19  jurisdiction.  On January 21, 2009, the Ninth Circuit – via a one-sentence order – granted the

20  Commission's motion and dismissed the appeal for lack of jurisdiction.  On March 13, 2009, the

21  Ninth Circuit issued its mandate giving effect to its January 21st ruling.

22

23         On August 3, 2009, Defendant Chapman filed his original Motion to Compel (Doc. 172).

24  On August 5, the Court ordered, *sua sponte*, that the August 3 motion be stricken due to

25  Defendant Chapman's failure to comply with the Federal and local rules of civil procedures'

26  "meet and confer" requirements.  (Doc. 174).  After a telephone call with undersigned counsel for

27

28

the Commission on or about August 13, Defendant Chapman filed the instant (renewed) Motion

on August 17 (Doc. No. 179).  On August 25, the Flanagan Joinder (Doc. No. 182) was filed.

### ARGUMENT

### I.       The Commission Has Produced All Relevant Documents to Defendants

On or about September 11, 2006, pursuant to Fed.R.Civ.P. 26(a)(1), the Commission

served upon all defendants, including Defendants Chapman and Flanagan, its Initial Disclosures.

See Exhibit A (attaching Initial Disclosures).  The Initial Disclosures disclosed thirty-three

individuals then known to the Commission "likely to have discoverable information relevant to

the disputed facts alleged in the Complaint."  The Initial Disclosures also noted that "[v]ia letter

dated April 19, 2006, the Commission has previously produced to all of the defendants copies of

all the transcripts containing the investigative testimony" of the thirty-three individuals and of all

the individual defendants.

In addition, the Initial Disclosures listed ninety "sources of all non-privileged documents

contained in the Commission's files of the investigation giving rise to this action."  The Initial

Disclosures also noted that, via the April 19 letter, "the Commission has previously produced to

all of the defendants all of the documents" produced by the ninety sources.  Finally, the Initial

Disclosures noted that, in addition to the ninety sources, there were four additional categories of

documents in the Commission's files and that "[t]hese additional documents may be viewed at

any reasonable time at the Commission's Boston ... Office."  The four additional categories of

documents included copies of the following:  correspondence; subpoenas; Wells Submissions;

and a copy of the Formal Order of Investigation.

On or about March 3, 2009, via a letter from attorney Rachel E. Hershfang to Defendants

Chapman and Flanagan, the Commission produced to them "a disk containing copies of

documents seized by the Internal Revenue Service during the search of your offices."  Ms.

Hershfang noted in the March 3 letter that the information on the disk "was provided to the SEC by the IRS during the criminal investigation in your case" and that "[g]iven the conclusion of the [criminal] case, the IRS recently gave us permission to provide a copy to you." Ms. Hershfang also noted that "[b]ecause there may be privileged material on the disk, I wanted to provide it to you and determine collectively how best to proceed." See Exhibit 8 to Defendant Chapman's Memorandum of Points and Authorities ("Chapman Memorandum") (attaching copy of 3/3/09 letter).

On July 29, 2009, undersigned counsel sent an email to all remaining defendants, including Defendants Chapman and Flanagan, noting the Commission's intention to shortly circulate a supplemental Rule 26(a) disclosure with the names of at least two individuals (Robert Potter and Shawn Hackman) who may have information related to this matter. See Exhibit B (copy of 7/29/09 email). On August 5, 2009, attorney David H. London sent a second email to all remaining defendants, including Defendants Chapman and Flanagan, noting that the Commission intended to name at least one additional individual (David Martin of the British Columbia Securities Commission) in its anticipated supplemental Rule 26(a) disclosure. See Exhibit C (copy of 8/5/09 email). On August 11, 2009, undersigned counsel sent the Commission's Supplemental Disclosures (previously referenced in the July 29 and August 5 emails) to all remaining defendants, including Defendants Chapman and Flanagan. See Exhibit D (copy of 8/11/09 Supplemental Disclosures).

*With one exception* – further discussed below – the Commission has produced, or made available, to all of the defendants remaining in this action (including Defendants Chapman and Flanagan) all documents it "may use to support its claims." Fed.R.Civ.P. 26(a)(1)(A)(ii). In addition, the Commission has provided to all remaining defendants (including Defendants Chapman and Flanagan) the names and contact information of "each individual likely to have

5

1   discoverable information." Fed.R.Civ.P. 26(a)(1)(A)(i).  Moreover, as discussed above, the

2   Commission has periodically supplemented its disclosures as required by Fed.R.Civ.P. 26(e).

3
        The Commission has also made available to defendants (including Defendants Chapman
4
    and Flanagan) copies of transcripts of each individual who testified before its staff during the
5
    private investigation.  Moreover, the Commission staff has, thus far, deposed nearly twenty
6
    individuals during discovery.  All defendants (including Defendants Chapman and Flanagan)
7
8   have, of course, had the opportunity to attend and participate in these depositions.

9       The *one exception* related to documents that the Commission *may use to support its*

10  *claims* (or which may lead to the discovery of admissible evidence) that it has not yet produced to

11  defendants (including Defendants Chapman and Flanagan) has been some of the documents it

12
    received from the British Columbia Securities Commission (BCSC).  These are the documents
13
    that were seized by the BCSC from the offices of St. George Capital, a Vancouver-based entity
14
15  affiliated during the relevant period with at least two of the defendants (Ingo W. Mueller and

16  Firoz Jinnah).  As the Court may recall, there has been an attorney-client privilege issue with

17  respect to such documents.  As undersigned counsel for the Commission noted during the last

18  status conference (held on August 13, 2009), once the privilege issue is resolved, it is the

19
    Commission staff's intention to produce the BCSC-seized documents to all defendants, including
20
    Defendants Chapman and Flanagan.
21
22      In sum, *with a single exception (explained above)*, the Commission has either produced,

23  or made available, to Defendants Chapman and Flanagan *every single document that it intends to*

24  *use in support of its claims*.  In addition, the Commission has informed Defendants Chapman and

25  Flanagan about *every single individual that it is aware of who may have discoverable*

26  *information*.  Moreover, the Commission has produced to Defendants Chapman and Flanagan

27  *every single transcript created during the course of the Commission's investigation*.  In light of
28

these facts, there can be no doubt but that Defendant Chapman's discovery requests – the subject

of the Motion – have been issued with a single goal in mind:  to attempt to harass and distract the

Commission from the litigation of this matter.

## II.   The Appropriateness of Communications With Other Law Enforcement Agencies

One of Defendant Chapman's principal contentions is that he is legally entitled to all

information about, and documents reflecting, communications between the Commission (or its

staff) and other law enforcement agencies.[3]  The Chapman Memorandum devotes approximately

three pages to a sub-section entitled "Relevance of Communications With the United States

Attorney's Office."  In that sub-section, Defendant Chapman makes the rather pedestrian

observation "that the Office of the United States Attorney for the District of Nevada is and has

been working with Plaintiff on this case."  Chapman Memorandum, p.5.  Defendant Chapman

then proceeds, for the next several pages, to outline all the tell-tale signs supporting his "belief"

that the Commission is, or has been, working with the U.S. Attorney's Office.  See id., pp.5-7.

Defendant Chapman then concludes that the information and documents he seeks are relevant

because "the allegation that the United States Attorney's Office is the driving force behind this

case and will be a major part of Mr. Chapman's defense."  Id., p.7.

---

[3]  See Chapman Memorandum, p.4 (noting that the Commission has refused to answer Interrogatories No.7 and No. 8 which collectively seek information about the Commission's (and its staff's) communications related to Defendant Chapman with third parties, including, but not limited to, other law enforcement agencies such as the Department of Justice and the U.S. Attorney's Office for the District of Nevada).  See also related Requests for Production No. 7 and No. 8 in Defendant Daniel G. Chapman's First Set of Requests for Production of Documents to Plaintiff Securities and Exchange Commission ("Chapman Interrogatories"), attached as Exhibit 3 to Chapman Memorandum.  The Commission also objected (and continues to object) to Interrogatory No. 17 on the ground that it is "an impermissible attempt to expand the number of allowed interrogatories beyond the number allowed by Fed.R.Civ.P. 33."  Exhibit 5 to Chapman Memorandum.

1    Firstly, the Commission has never denied that its staff has had numerous communications

2    over the years with a number of law enforcement agencies that have either investigated and/or

3    prosecuted some of the defendants in this action – including the U.S. Department of Justice

4    (DOJ), the Internal Revenue Service (IRS) and the British Columbia Securities Commission

5    (BCSC).  For example, during the Commission's investigation, the staff provided Defendants

6    Chapman and Flanagan (as it does with all witnesses that appear before it) with a Commission

7    Form 1662.  See Exhibit E (excerpts from investigative testimonies of Defendants Chapman and

8    Flanagan).  Form 1662 contains certain warnings, including that "[t]he Commission often makes

9    its files available to other governmental agencies, particularly the United States Attorneys and

10   state prosecutors.  There is a likelihood that information supplied by you will be made available

11   to such agencies where appropriate." United States v. Stringer, 535 F.3d 929, 934 (9th Cir. 2008)

12   (quoting Form 1662) (internal quotations omitted).  In addition, the staff warned Defendants

13   Chapman and Flanagan during their testimonies (as it does with all witnesses that appear before

14   it) that "the facts developed in this investigation might constitute violations of … Federal or state

15   … criminal laws." See Exhibit E.

16        Secondly, the Form 1662 provided to Defendants Chapman and Flanagan during the

17   investigation expressly noted that they (like all other witnesses subpoenaed to testify before the

18   staff), could assert their Fifth Amendment rights.  As the Court of Appeals for the Ninth Circuit

19   noted in Stringer: "After the heading 'Fifth Amendment and Voluntary Testimony,' the form

20   states that:

> Information you give may be used against you in any federal … civil or
> criminal proceeding brought by the Commission [or] any other agency.
> You may refuse, in accordance with the rights guaranteed to you by the
> Fifth Amendment of the Constitution of the United States, to give any
> information that may tend to incriminate you or subject you to fine,
> penalty, or forfeiture.

8

Id. at 934-35.  In fact, Defendants Chapman and Flanagan both invoked their Fifth Amendment

rights during investigative testimony before the Commission staff.  See Complaint, ¶¶ 13-14.

However, despite the warnings in Form 1662, Defendant Chapman and the law firm of Flanagan

& Associates[4] provided documents to the staff during the investigation.  See Exhibit A (Exhibit B

to Initial Disclosures).  As such, Defendants Chapman and Flanagan cannot now complain about

the Commission staff's provision of documents and/or information received from them (or from

any other witness who appeared before the staff during its investigation) to the DOJ.  See

Chapman Memorandum, pp.5-6.

      Lastly, after the Commission investigation ended and the Complaint in this matter was

filed, the staff did not hide the fact that it had communicated, and continued communicating, with

other law enforcement agencies.  For example, in a privilege log provided by the staff to

Defendant Chapman in February 2009, the staff noted that it had documents in its files reflecting

communications with the IRS and the Bermuda Monetary Authority.  See Exhibit 7 to Chapman

Memorandum (attaching a copy of the privilege log).  Similarly, in the March 3, 2009 letter from

Commission attorney Hershfang to Defendants Chapman and Flanagan, the staff referenced a

recent communication it had had with the IRS.  See Exhibit 8 to Chapman Memorandum

(attaching copy of 3/3/09 letter).  The staff has also throughout let it be known that it has had in

its possession a voluminous amount of documents seized by the BCSC from the offices of St.

George Capital in Vancouver, Canada.

      The Supreme Court, the Court of Appeals for the Ninth Circuit and other courts have all

made clear that it is completely appropriate for the Commission staff to coordinate its

investigations, and share information derived therefrom, with other law enforcement agencies,

---

[4]  An apparent successor to the law firm of Chapman and Flanagan.

including the DOJ.  See United States v. Stringer, 535 F.3d at 936-37 ("The Supreme Court has

held that the government may conduct parallel civil and criminal investigations without violating

the due process clause, so long as it does not act in bad faith.") (citing United States v. Kordel,

397 U.S. 1, 11 (1970)); id. at 933 ("Federal securities laws authorize the SEC to transmit

evidence it has gathered to the USAO to facilitate a criminal investigation by the USAO.") (citing

15 U.S.C. §§ 77t(b), 78u(d)).[5]  Thus, Defendants' complaint about the Commission staff's

provision of information to another law enforcement agency is completely unfounded.

**III.     The Commission and Its Staff Have Never Acted in Bad Faith**

In Stringer, the Ninth Circuit held that Commission staff members had *not* acted

inappropriately (or in "bad faith") even though:

> [t]he SEC facilitated the criminal investigation in a number of ways.  The
> SEC offered to conduct the interviews of defendants so as to create 'the
> best record possible' in support of 'false statement cases' against them,
> and the AUSA instructed the SEC Staff Attorney on how best to do that.
> The AUSA asked the relevant SEC office, based in Los Angeles, to take
> the depositions in Oregon so that the Portland Office of the USAO would
> have venue over any false statements case that might arise from the
> depositions, and the SEC did so.

535 F.3d at 934; see also Dresser, 628 F.2d at 1385-86 (Congress has "acknowledged the SEC's

dual investigative role in preparing cases for civil and criminal enforcement actions.  [It] also

recognize[s] the necessity of close cooperation between the SEC and Justice in preparing such

cases.").

---

[5]  See also SEC v. Dresser Industries, Inc., 628 F.2d 1368, 1376 (D.C. Cir. 1980) (en
banc) (the federal securities laws "explicitly empower the SEC to investigate possible infractions
of the securities laws with a view to both civil and criminal enforcement, and to transmit the fruits
of its investigations to Justice in the event of potential criminal proceedings."); cf. Standard
Sanitary Manufacturing Co. v. United States, 226 U.S. 20, 52 (1912) ("The Sherman Act provides
for a criminal proceeding to punish violations and suits in equity to restrain such violations, and
the suits may be brought simultaneously or successively.  The order of their bringing must depend
upon the Government ... .").

10

In the context of parallel investigations and prosecutions, the Supreme Court and Ninth Circuit have declared that "the government may act in bad faith if it brings a civil action *solely* for the purpose of obtaining evidence in a criminal prosecution and does not advise the defendant of the planned use of evidence in a criminal proceeding." Stringer, 535 F.3d at 937 (emphasis added) (citing Kordel, 397 U.S. at 12-13); id. at 937 ("District courts have occasionally suppressed evidence or dismissed indictments on due process grounds where the government made affirmative misrepresentations or conducted a civil investigation *solely* for purposes of advancing a criminal case.") (emphasis added) (citations omitted).

In this case, Defendants Chapman and Flanagan have not pointed to any evidence (or facts) suggesting any "bad faith" on the Commission's (or its staff's) part. As summarized above, during the investigation, the Commission staff provided Forms 1662 to both Defendants. The Form 1662 expressly informed Defendants Chapman and Flanagan about their Fifth Amendment rights and that there was "a likelihood that information supplied by you will be made available" to criminal prosecutors. Defendants Chapman and Flanagan (as practicing attorneys) clearly understood those warnings – as evidenced by the fact that they both selectively asserted their Fifth Amendment rights during the investigation (i.e., asserting the Fifth during testimony but not with respect to certain documents produced to the staff).

In addition, Defendants Chapman and Flanagan cannot seriously contend (and certainly cannot point to any evidence suggesting) that the Commission decided to investigate them, and then file a civil action against them, "solely for the purpose of obtaining evidence" to be used in their criminal prosecution. As recognized in the Chapman Memorandum, see p.2, the Commission issued its Formal Order of Investigation related to the Exotics matter on January 15, 2002. Defendants Chapman and Flanagan were criminally charged in August 2003 for conduct *unrelated* to Exotics – the company that is the subject of this proceeding. The Commission then

1    filed this Exotics-related action in April 2005.  Thus, on its face, it is clear that the Commission

2    had its own independent reasons for investigating and charging Defendants Chapman and

3    Flanagan.  See Stringer, 535 F.3d at 939 (there was no bad faith on the Commission's part where,

4    among other things, its investigation "was not a pretext for the USAO's criminal investigation of

5    defendants."); id. at 939 (there was no bad faith by the U.S. Department of the Treasury where it

6    "instituted its investigation before any indictment and in order to file its own civil complaint.")

7    (citing United States v. Unruh, 855 F.2d 163, 1374 (9th Cir. 1987)).[6]

8

9           Moreover, there simply would not have been any reason for the DOJ to use the

10   Commission staff to obtain whatever evidence or information it needed to build (or attempt to

11   build) its criminal case against Defendants Chapman and Flanagan.  Not only did the DOJ have

12   access to (and obtain evidence from) other investigative agencies – such as the IRS personnel

13   who worked on the criminal prosecution – but it also presumably could have obtained whatever

14   evidence it needed against Defendants Chapman and Flanagan via Grand Jury subpoenas.  See

15   Dresser, 628 F.2d at 1381 ("the subpoena power of the grand jury is as broad [or] perhaps broader

16   than that of the SEC.  Justice can procure from [defendant] directly whatever materials it might

17   procure indirectly through the SEC.").

18

19          In short, there is no evidence (or facts) suggesting that the DOJ is the "driving force

20   behind this case," as claimed in the Chapman Memorandum, p.7.  To the contrary, the evidence is

21   that the Commission investigated, and charged, Defendants Chapman and Flanagan for its own

22   purposes – i.e., to enforce alleged violations of the federal securities laws with respect to Exotics,

23

24           [6] See also Dresser, 628 F.2d at 1387 ("Where the [Commission] has a legitimate
     noncriminal purpose for the investigation, it acts in good faith … even if it might use the
25   information gained in the investigation for criminal enforcement purposes as well."); id. at 1388
     ("Nor does the participation of two SEC attorneys in the Justice task force cast doubt upon the
26   good faith of the Commission."); United States v. Churchill, 483 F.2d 268, 272 (1st Cir. 1973);
     United States v. Teyibo, 877 F. Supp. 846, 855 (S.D.N.Y. 1995).

27

28
                                                      12

a company that was not even the subject of the criminal charges filed against them.[7]  As such,

Defendants are not entitled to discovery on the substance of any communications between the

Commission (or its staff) and other law enforcement agencies.  See Dresser, 628 F.2d at 1388

(defendant in Commission subpoena enforcement action not allowed discovery on, among other

things, "the SEC criminal referral" and "the ethical propriety of SEC agents' participation in the

criminal investigation."); id. at 1388 ("Discovery should be permitted only where the [defendant]

is able to distinguish himself from 'the class of the ordinary [defendant],' … by citing special

circumstances that raise doubts about the agency's good faith.") (citations omitted); id. at 1388-89

(defendant "has suggested no improper motive for the SEC investigation" and his "bare

protestations of innocence do not suffice to call the SEC's bona fides into question.").

**IV.**     **Communications Between Commission Staff and Other Law Enforcement**
            **Agencies Are Privileged**

        In response to Defendant Chapman's discovery requests (the subject of the Motion), the

Commission lodged both general and specific objections to any discovery request that sought to

probe into the substance of communications between the Commission (or its staff) and other law

enforcement agencies.  See Exhibits 4-6 to Chapman Memorandum (Commission responses to

Defendant Chapman's discovery requests).  The Commission refused to respond to such

discovery requests on the ground that communications between it (or its staff) and other law

enforcement agencies are not discoverable given the "work-product immunity, law enforcement

privilege [and] deliberative privilege."  Exhibit 5 to Chapman Memorandum, p.2, ¶ 2 (general

objections to interrogatories); pp.10-11 (specific responses to Interrogatories No. 7 and 8);

---

[7]  This is not to in any way suggest, of course, that it is inappropriate for the Commission
and the DOJ to bring simultaneous civil and criminal charges against the same defendant for the
same underlying conduct.  That is a commonplace occurrence.

Exhibit 6 to Chapman Memorandum, p.2, ¶ 2 (general objections to request for production of documents); pp.5-6 (specific responses to Requests for Production No. 7 and 8).

In addition, in response to an inquiry by Defendant Chapman, the Commission reasserted its position on the matter (i.e., that such communications are privileged) in a December 8, 2008 letter from Commission attorney Hershfang to Defendant Chapman that cited legal authority for the Commission's position. See Exhibit F (copy of 12/8/08 letter).[8]  That should have, of course, been the end of Defendant Chapman's (and now Defendant Flanagan's) efforts to inquire into such communications.  Instead, they have pressed on for the substance of such communications via the Motion – supported by the Chapman Memorandum, a document drafted by a practicing attorney that yet does not cite a single source of law for any of its proffered legal propositions.

"The Federal Rules of Civil Procedure contemplate broad discovery, permitting discovery 'regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action.'"  United States v. Farley, 11 F.3d 1385, 1390 (7th Cir. 1993) (emphasis in original) (quoting Fed.R.Civ.P. 26(b)(1)).  Communications between the Commission (or its staff) and other law enforcement agencies are protected from discovery by the deliberative process privilege and/or the work product doctrine.

"The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency. ...  Since frank discussion of legal and policy matters is essential to the decisionmaking process of a governmental agency, communications made prior to and as part of an agency determination are protected from disclosure." Farley, 11 F.3d at 1389 (citing NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150-152 (1975)).  "The deliberative

---

[8]  Ms. Hershfang's letter only addressed the deliberative and law-enforcement privileges (and not the work-product doctrine) since it was attempting to address specific questions that had been posed by Defendant Chapman to undersigned counsel.

14

process privilege may be overcome where there is a sufficient showing of a particularized need to outweigh the reasons for confidentiality." Id. (citing Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980); Black v. Sheraton Corp. of America, 564 F.2d 531, 545 (D.C. Cir. 1977)). "[R]elevance alone is an insufficient reason for breaching the deliberative process privilege." Id. at 1390.

One of the documents sought during discovery by the civil defendant in Farley was "the referral memorandum from the FTC [Federal Trade Commission] staff to the Department of Justice." 11 F.3d at 1389. The court refused to order production of the document because "[h]aving been rendered prior to the Department's decision to bring an action against [defendant], the document is within the Department's deliberative process privilege. Since the document was pre-decisional and deliberative, *the fact that the document passed from one agency to another does not terminate its privileged status*." Id. (emphasis added) (citing Renegotiation Board v. Grumman Aircraft Engineering Corp., 421 U.S. 168 (1975); Bureau of Nat'l Affairs, Inc. v. United States Dep't of Justice, 742 F.2d 1484 (D.C. Cir. 1984)).

Similarly, in FDIC v. Eagle Properties, 105 F.R.D. 12, 15; 1984 U.S. Dist. LEXIS 21665 (D.C. 1984), a party sought discovery from the Commission of, among other things, "communications between SEC and OCC [Office of the Comptroller of the Currency] staff." The court noted: "The deliberative process privilege protects from disclosure those communications within the federal government which consist of advice, recommendations, opinions, and other information transfers involved in the deliberative processes of governmental agencies." Id. (citing Murphy v. Department of the Army, 613 F.2d 1151, 1154 (D.C. Cir. 1979); Brinton v. Dep't of State, 636 F.2d 600 (D.C. Cir. 1980); McClelland v. Andrus, 606 F.2d 1278, 1287-88 (D.C. Cir. 1979)). The court noted that: "For the privilege to apply, the communication or document must have been predecisional and must have been deliberative in that it was actually

15

related to the decision making process." Id. (citing Kansas State Network, Inc. v. FCC, 720 F.2d 185, 191 (D.C. Cir. 1983); Jordan v. Dep't of Justice, 591 F.2d 753, 772-79 (D.C. Cir. 1978) (en banc)).

The Eagle Properties court concluded that the information sought from the Commission was protected from discovery by the deliberative process privilege.  It noted that:

> The information sought comes from communications between SEC and OCC staff which took place during the course of the two agencies' investigations ... .  These communications concerned litigation strategy generally, and such specific topics as what issues were raised in the case, what witnesses to call for deposition, and what questions should be asked. Most notably, the communications involved staff discussions of the preparation and filing of the action against [defendant] and the allegations to be made in the complaint ... These communications and documents are clearly protected by the deliberative process privilege.  First, they are predecisional in that they all relate to, and precede, the final decision to file an action against [defendant].  Further, they are clearly deliberative in that they were an integral part of the formulation of decisions throughout the investigations and the eventual filing of the lawsuit.

Id.

In addition, the Eagle Properties court separately concluded that the information sought from the Commission was protected from discovery by the work-product doctrine, which "shelters the mental processes of the attorney, [providing] a privileged area within which he can analyze and prepare his client's case. ...  This doctrine has been codified in Fed.R.Civ.P. 26." Id. at 15-16 (internal quotations omitted) (citing United States v. Nobles, 422 U.S. 225, 238 (1975); Hickman v. Taylor, 329 U.S. 495 (1947)).  The court noted that "[i]n order to obtain [work-product] materials, the defendant/movant must show a substantial need," something defendant/movant had not shown.  Id. at 16 (citing Fed.R.Civ.P 26; Hickman, 329 U.S. at 512). See also Farley, 11 F.3d at 1390 ("Documents protected by the work product privilege ... need only be disclosed upon a showing of substantial need.").

1    Finally, the communications sought by Defendants Chapman and Flanagan are also

2    protected by the law-enforcement privilege.  See Commonwealth of Puerto Rico v. United

3    States, 490 F.3d 50, 61-65 (1st Cir. 2007); see also Roviaro v. United States, 353 U.S. 53, 59

4    (1957); In re U.S. Dep't of Homeland Sec., 459 F.3d 565 (5th Cir. 2006); In re Dep't of

5    Investigation of the City of New York, 856 F.2d 481, 484 (2d Cir. 1988) ("The purpose of this

6    privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the

7    confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the

8    privacy of individuals involved in an investigation, and otherwise to prevent interference with an

9    investigation."); Black v. Sheraton Corp. of Am., 564 F.2d 531, 545 (D.C. Cir. 1977) (public has

10   an interest in "minimizing disclosure of documents that would tend to reveal law enforcement

11   investigative techniques or sources.").  The law enforcement privilege can only be overcome "by

12   a sufficient showing of need."  Commonwealth of Puerto Rico, 490 F.3d at 62.

13       For the reasons discussed above, it is clear that communications between the Commission

14   (or its staff) and other law enforcement agencies are protected from discovery by the deliberative

15   process and/or law enforcement privileges and/or the work-product doctrine.  Defendants have

16   not shown (or suggested) any "particularized need" to overcome the deliberative process

17   privilege, see Farley, 11 F.3d at 1389; nor a "sufficient" need to overcome the law enforcement

18   privilege, see Commonwealth of Puerto Rico, 490 F.3d at 62; nor a "substantial need" to

19   overcome the work product doctrine, see Eagle Properties, 105 F.R.D. at 16; Farley, 11 F.3d at

20   1390.  Nor have they shown (or suggested) any bad faith (or lack of good faith) on the part of the

21   Commission or its staff necessitating discovery of such communications.

22   **V.   Communications Between Commission Staff and Other Law Enforcement**
     **Agencies Are Also Here Not Relevant**

23       As the Farley and Eagle Properties courts also noted, it is difficult, if not impossible, for a

24   movant to show a "particularized" or "substantial" need for privileged documents when they are

17

irrelevant to the matter before the court.  As the <u>Farley</u> court put it: "Since the documents at issue are not relevant to the controversy before us, [defendant] cannot, as a matter of law, make a showing of need."  11 F.3d at 1390.  Similarly, the <u>Eagle Properties</u> court concluded that "[n]ot only are the SEC materials privileged, but the Court cannot see any way in which they could be relevant to the … transaction at issue in this case."  105 F.R.D. at 16.

Likewise, Defendants Chapman and Flanagan have failed to show how the underlying contents of communications between the Commission or its staff and other law enforcement agencies could possibly be relevant to determining the truthfulness (or not) of the allegations in the Complaint.  See <u>Farley</u>, 11 F.3d at 1390 ("The discovery proposed here is not relevant to the issue presented by the government's complaint.").  It is also not clear how the contents of such communications could possibly aid Defendants in defending against the Commission's allegations since nowhere in their Answers do they assert misconduct by either the Commission or the criminal authorities as an affirmative defense.  (Docs. No. 133 (Flanagan) and 134 (Chapman)).  See <u>Farley</u>, 11 F.3d at 1390 ("Nor is the proposed discovery relevant to any of [defendant's] affirmative defenses.").

As discussed above, with a limited exception, the Commission staff has already produced to all of the remaining defendants in this matter every document it may seek to introduce at trial in support of its claims.  It has also made available to all defendants the names (and, where available, the contact information) of all individuals who may have any information relevant to the claims and allegations in the Complaint.  That is the sort of relevant information that might aid Defendants Chapman and Flanagan in defending against the Complaint.  On the contrary, communications between the Commission or its staff and other law enforcement agencies are simply not relevant to determining the merits of the Complaint or of any (legitimate) defense thereto.  See <u>Farley</u>, 11 F.3d at 1390-91 ("The suppositions of FTC staff members expressed in

internal memoranda," "intra-agency communications," and "the postulations of agency staff members" are not relevant to the matter before the court).

**VI.     The Discovery Requests Are Unduly Burdensome and Intended to Harass**

As the Commission noted in response to the discovery requests that are the subject of the Motion, the requests are "unduly burdensome, unreasonable and intended to harass." <u>See</u> Exhibit 5 to Chapman Memorandum, p.3, ¶ 5 (general objections to interrogatories).  As admitted in the Chapman Memorandum, many of the interrogatories and document requests purport to require the Commission to identify "all of the evidence" it might "intend to rely at trial to support" an allegation made in the Complaint.  <u>See</u> Chapman Memorandum, pp.3-5; <u>see</u> <u>also</u> Exhibits 2 and 3 to Chapman Memorandum (respectively, the interrogatories and document requests).

In other words, with the Motion, Defendants Chapman and Flanagan seek the Court to compel the Commission to cull through thousands of pages of investigative and deposition transcripts and other documents and to specifically identify every piece of evidence that it intends to introduce at trial in support of specific allegations made in the Complaint.  As noted above, these thousands of pages of documents have already been provided to Defendants Chapman and Flanagan.  They are able themselves (especially as attorneys) to review them and determine what evidence the Commission is likely to seek to introduce against them at the trial of this matter.  They are not entitled to obtain from the Commission during discovery what amounts to an outline of an opening or closing statement.  Not surprisingly, the Chapman Memorandum does not cite any case law in support of the imposition of such an unduly burdensome task on the Commission.  In fact, the Chapman Memorandum does not cite a single case in support of any of the purported legal propositions it advances.

Clearly, what Defendants Chapman and Flanagan seek via the Motion and the Chapman Memorandum is to re-litigate the motions to dismiss which they filed and lost.  <u>See</u> Chapman

19

Memorandum, p.9 (re-arguing that "FRCP 9(b) requires that a complaint alleging fraud requires pleading with specific particularity" and "that the SEC has not met their obligations under FRCP 9(b) and is simply conducting a fishing expedition."). With the discovery requests here at issue, Defendants simply seek a greater level of pleading detail than required by Fed.R.Civ.P. 9(b) – a matter that has already been decided by the Court.

Finally, as discussed above, the discovery requests clearly seek privileged and/or protected material and the Defendants have not shown any type of need whatsoever for the materials. As such, the requests are clearly unduly burdensome, unreasonable and intended to harass.

## VII.    Sanctions Should Here Be Imposed

As attorneys, Defendants Chapman and Flanagan know (or must be presumed to know) that there is no legal support whatsoever for obtaining the information they seek from the Commission. Most of the information they seek is, as detailed above, clearly privileged and/or protected from discovery. Moreover, they have not even attempted to make (nor could they make) any type of a showing of "need" for such information – since the information they seek is irrelevant to these proceedings. Especially in light of the fact that, with a limited exception, the Commission has turned over its entire investigative file (and the names of all relevant individuals) to Defendants Chapman and Flanagan, there can be no doubt that the Motion is frivolous and that the related discovery requests are clearly burdensome, unreasonable and intended to harass. See Fed.R.Civ.P. 26(g)(1)(B) (discovery request must, *inter alia*, be "consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law" and must not be "interposed for any improper purpose, such as to harass … ."); Advisory Committee Notes to 1983 Amendment to Fed.R.Civ.P. 26

("Advisory Notes") ("[E]very discovery request … should be grounded on a theory that is reasonable under the precedents or a good faith belief as to what should be the law.").

     Given the Motion's frivolity, sanctions are here appropriate.  <u>See</u> Fed.R.Civ.P. 26(g)(1)(B) (if discovery request violates rules of civil procedure, "the court, on motion or on its own, *must* impose an appropriate sanction … .") (emphasis added); Advisory Notes ("The new rule *mandates* that sanctions be imposed on attorneys who fail to meet the standards established [therein].").  The Court should, at a minimum, order Defendants Chapman and Flanagan "to pay the reasonable expenses, including attorney's fees, caused by the[ir] violation." Fed.R.Civ.P. 26(g)(1)(B).

<u>**CONCLUSION**</u>

     For the reasons discussed above, the Commission respectfully requests that the Motion be denied and, for the reasons discussed herein, that sanctions be imposed against Defendants Chapman and Flanagan.

September 4, 2009

Respectfully submitted,

    /s/ Silvestre A. Fontes
Silvestre A. Fontes
Thomas J. Rappaport
David H. London
SECURITIES & EXCHANGE COMMISSION
33 Arch Street, 23rd Floor
Boston, MA  02110-1424
(617) 573-8991 (Fontes)
(617) 573-5940 (fax)
fontess@sec.gov

## CERTIFICATE OF SERVICE

I, Silvestre Fontes, hereby certify that on September 4, 2009 I caused copies of the Securities and Exchange Commission's Opposition to Defendants Chapman's Motion to Compel to be served via first-class U.S. mail, upon the following persons:

O. Robert Meredith, Esq
1111 Brickyard Road  Suite 206
Salt Lake City, UT  84106-2597
robert@meredithlaw.com
(counsel for defendant Andersen)

Kelly O. Slade, Esquire
Law Offices of Kelly Slade, Ltd
3340 Camino Gardens Way
Las Vegas, NV 89146
kslade@embarqmail.com
(local counsel for defendant Andersen)

David A. Zisser, Esquire
Isaacson Rosenbaum P.C.
633 17th Street   Suite 2200
Denver, CO 80202-3622
dzisser@ir-law.com
(counsel for Jinnah and Mueller)

Thomas W. Davis, II
Howard & Howard
3800 Howard Hughes Pkwy Suite 1400
Las Vegas, NV 89169
(local counsel for Jinnah and Mueller)
TDavis@howardandhoward.com

Daniel G. Chapman, Esquire
1235 N. Clybourn Suite A-187
Chicago, IL 60610
DGChap@cox.net
(Pro Se)

Donald J. Christie, Esquire
7143 Mission Hills Dr.
Las Vegas, NV 89113
donchristie@aol.com
(counsel for defendant Corso)

Sean T. Prosser, Esquire
Tyson E. Marshall, Esquire
Morrison & Foerster LLP
12531 High Bluff Drive, Suite 100
San Diego, CA 92130-2040
sprosser@mofo.com
tmarshall@mofo.com
(counsel for Rabinovitz and Brinsky)

David J. Merrill, Esquire
David J. Merrill, P.C.
2850 West Horizon Ridge Pkwy  # 200
Henderson, NV 89052
(local counsel for Rabinovitz and Brinsky)

James L. Ericksteen
1228 West Hastings St. # 1502
Vancouver, B.C.   V6E 4S6
CANADA
jericksteen@yahoo.ca

Sean Flanagan and Flanagan & Associates, Ltd
Flanagan Ltd.
7251 W. Lake Mead Blvd Suite 300
Las Vegas, NV 89128
grumpysean@yahoo.com
(Pro Se)