**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>vs.<br><br>EXOTICS.COM, INC., *et al.*,<br><br>        Defendants. | Case No. 2:05-cv-00531-MMD-GWF<br><br>**ORDER** |

This matter is before the Court on Plaintiff Securities and Exchange Commission's ("SEC") Motion to Establish a New Installment Payment Plan (ECF No. 531), filed on May 8, 2017. The SEC filed its Memorandum (ECF No. 536) on June 13, 2017. Defendant Gary Thomas Vojtesak ("Thomas") filed his Response (ECF No. 539) on July 7, 2017. The SEC filed its Motion to Strike, or in the Alternative, Reply to Defendant's Response (ECF No. 542) on July 18, 2017.

**BACKGROUND**

On December 22, 2006, the Court entered a default judgment against Mr. Thomas in the amount of $540,000.00. *Default Judgment* (ECF No. 86). On March 3, 2014, the SEC filed a motion for an installment payment order against Thomas pursuant to 28 U.S.C. § 3204. *Motion for Installment Payment Order* (ECF No. 445). Thomas did not file a response to the SEC's motion and the Court entered an order on March 31, 2015 ordering him to make monthly installment payments of $15,966.00 in satisfaction of the judgment, with the first installment payment due on April 1, 2014. *Order* (ECF No. 449). Thomas was also required to submit quarterly financial statements to the SEC. *Id.* On June 9, 2014, the SEC filed a motion for order to show cause why Thomas should not be held in civil contempt for failure to comply with the installment payment order. *Motion for Order to Show Cause* (ECF No.

450). The SEC deposed Thomas on October 14, 2014 at which time it learned that he had dissipated money from an account he controlled and invested it in another company. The Court ordered Thomas to deposit $700,000 into the registry of the Court, but he never did. *Order* (ECF No. 473); *Motion* (ECF No. 536), pg. 3, ¶8. In December 2014, the SEC and Thomas entered into an agreement pursuant to which Thomas would pay $2,000 per month on the judgment during the 2015 calendar year, and $3,000 per month during the 2016 calender year. *Memorandum* (ECF No. 536), *Tyler Declaration* ¶ 4, *Exhibit B*. Based on this agreement, the contempt proceedings were stayed. Thomas did not make any payments pursuant to installment agreement. Accordingly, the stay was lifted on January 11, 2016. *Order* (ECF No. 489).

The Court conducted a show cause hearing on July 27, 2016. The Court found that Thomas failed to comply with the previous order to make installment payments, submit quarterly financial reports, and to notify the SEC of changes in his financial condition. The Court directed the parties to work at establishing a new payment plan and stated that if they could not agree the Court would refer the matter to the Magistrate Judge. *Minutes of Proceedings* (ECF No. 512). The Court entered an order on August 9, 2016, finding Thomas in civil contempt and ordering him to provide bank statements and a variety of other business and financial information and records to the SEC. *Order* (ECF No. 515). The SEC asserts that Thomas failed to produce many of the ordered items and materially misrepresented his financial condition. *Motion* (ECF No. 536), pg. 4, ¶ 14. The parties were unable to reach agreement on a new payment plan. The SEC notes that Defendant Thomas made an offer to pay $150.00/month which the SEC rejected as unreasonably low. Accordingly, the SEC has brought this motion to implement a new installment payment plan. With interest calculated on the judgment through May 16, 2017, the amount owed is now in excess of $843,386.55. *Memorandum* (ECF No. 536), *Tyler Declaration* ¶ 3.

The SEC asserts that Thomas, by his own statements, has interests in six corporate entities: 44 Square, LLC; PVC OPPS, LLC; ZaaZoom Solutions, LLC; 4040 Holdings, LLC; I AM AKA, LLC; and Clean Shoe, LLC. *Memorandum* (ECF No. 536), pg. 6, *Tyler Declaration* ¶ 4, *Exhibits E* and *F*. The SEC further states that in 2016 Thomas was a signatory on bank accounts located at BBVA Compass Bank in the names of 44 Square, LLC, PVC OPPS, LLC, 4040 Holdings, LLC, and I AM AKA, LLC. These bank accounts were opened in early January 2016, but were closed in late May and early June

2016. New accounts were opened at Bank of America in the names of I AM AKA, LLC, 44 Square, LLC, and Clean Shoe, LLC. The address for the holders of the Bank of America accounts is Thomas's home address in Scottsdale, Arizona. A person named Andrea Skinner is listed as the signatory on these accounts. *Id.* at pg. 6. The SEC notes that during his testimony before the Court on July 27, 2016, Thomas admitted that the Bank of America accounts belong to him. He also testified that he had received $100,000 from the sale of a bar business approximately six weeks before the hearing. Thomas claimed that he had suffered a financial loss from this sale based on the amount of money he had previously invested in the business. *Id.* at pgs 7-8; *Tyler Declaration*, ¶ 4, *Exhibit D*.

Nelson Allen, a legal intern with the SEC reviewed and summarized the 2016 bank account records of the entities controlled by Thomas. *Memorandum* (ECF No. 536), *Allen Declaration*. During the calender year 2016, $592,079.00 was deposited into the accounts and $577,849.00 was withdrawn from the accounts. The SEC further states that Thomas uses these bank accounts to pay personal living expenses, including $16,308 in dining expenses; $14,678 in clothing expenses; $1,790 on tickets, movies and concerts; $6,823 in charges on Amazon; $2,438 for gym dues and yoga sessions; $676 for manicures; and $4,975 on iTunes. Mr. Thomas also paid $715 for court resurfacing; $4,286 for photography; $5,592 for a ski trip; and $7,635 for a Fourth of July party. Additionally, Thomas used the accounts to pay for regular house cleaning, landscaping and pool cleaning services. Thomas also used these accounts to make the mortgage payments for the house in which he resides and which is titled in his father's name. *Id.* According to the calculations made by Mr. Allen, Defendant Thomas spent $103,711.07 in 2016 on personal and family living expenses.

Defendant Thomas states in his response to the SEC's memorandum that during 2015 and 2016 he did not generate any income, revenue or earnings from any business entity and was living on borrowed money. Thomas started a business which he thought would generate revenue and earnings. The business failed to yield any revenue and he needed to continue to borrow funds. *Response* (ECF No. 539), at pg. 4. Thomas attached as exhibits copies of twelve promissory notes that he allegedly executed and delivered in 2014, 2015 and 2016. *Exhibits 9* and *10*. Six of the notes were made by Mr. Thomas personally or in his name and on behalf of one of the limited liability companies. The other notes were made by one of the limited liability companies, usually "I am aka, LLC", which Mr. Thomas signed as

the manager. The alleged loans evidenced by these promissory notes were made between October 25, 2014 and February 21, 2017 and total $594,000.00. Most of the promissory notes are identical in form except for the date, amount and name of holder. They were generally payable in a lump sum within one or two years after the date of the note. A few of the notes were "[a]cknowledged and accepted by" the holder whose signature is allegedly contained on the note. Defendant Thomas has not provided any affidavits or declarations from any of the lenders/holders attesting to the authenticity of the notes, that funds were actually loaned to Mr. Thomas or his businesses, or whether any of the loans were repaid. Mr. Thomas did not provide any information as to what these loans were used for, other than to state that he paid his living expenses from the loans. Mr. Thomas has not provided any tax returns for the years from 2011 through 2016. It is therefore not known what he reported as taxable income during those years, or whether he even filed federal income tax returns.

Defendant has submitted a declaration by an individual named Naomi Sanchez who identifies herself as a specialist certified in Quick Books accounting software. *Response* (ECF No. 539), *Exhibit 16*, ¶ 1. Ms. Sanchez states: "The first and most important thing I discovered was that the SEC had erroneously added an additional $300,579.30 in bank deposits to the total." *Id.* at ¶ 4. She does not identify which deposits were erroneously added, however. The Court has added the deposits listed in the SEC's exhibit and they appear to correctly total $592,079.00.

Defendant Thomas states in the conclusion to his response:

> If Thomas can afford to borrow money to live and fund his lifestyle through loans until one of his business ventures starts to generate cash flow, income and earnings, Mr. Thomas should have the right to do so. Being his lifestyle is afforded through loan proceeds and not earnings, 28 U.S.C. § 3204 is not applicable to Thomas and Thomas respectfully submits an offer of $150.00 per month toward this debt based on his limited ability to pay.

*Response* (ECF No.539), pg. 10.

## **DISCUSSION**

28 U.S.C. § 3204 provides that if it is shown that a judgment debtor (1) is receiving or will receive substantial nonexempt disposable earnings from self employment that are not subject to garnishment; or (2) is diverting or concealing substantial earnings from any source, or property received in lieu of earnings, then upon motion by the United States and notice to the judgment debtor, the court

may order that the judgment debtor make specified installment payments to the United States. An installment payment order may not be issued or enforced if 'there is in effect a writ of garnishment of earnings issued under this chapter and based on the same debt." 28 U.S.C.§ 3204(c)(1).

The types of debtors for which installment payments may be ordered under Section 3204 is limited. "The debtor must be self-employed like doctors, accountants, and lawyers. The types of debtors would also include the debtor who controls a family business through a corporation to which the debtor provides important services, but who may be paid no salary to prevent creditors from garnishing the same. In turn, the corporation pays for the debtor's expenses, such as medical, insurance, car, and other types of support services." *Chao v. Vidtape, Inc.*, 2004 WL 203008, at *2 (E.D.N.Y. Jan. 30, 2004), (quoting Hon. James J. Brown, *Judgment Enforcement* § 5.03[D] at 5-15 (2d ed. 1999)).

15 U.S.C. § 1673(a) states that the maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment, or an installment payment order, may not exceed (1) 25 percent of the individual's disposable earnings for that week, or (2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 6(a)(1) of the Fair Labor Standards Act of 1938 [29 U.S.C. § 206(a)(1)] in effect at the time the earnings are payable. The statute provides that the amount of the installment payment order may not exceed the the lesser amount derived from these alternative methods of calculation. 28 U.S.C. § 3002(5) defines "disposable earnings as "that part of earning remaining after all deductions required by law have been withheld.

Defendant Thomas qualifies as a self employed businessman within the meaning of Section 3204. Thomas submitted a financial statement in September 2016 in which he stated that he received monthly consulting fees of $10,000.00 and also received another "$10,000.00 plus" per month in "loans" which he allegedly used to pay his and his family's living expenses. *Response* (ECF No. 539), *Exhibit 11*. In that same statement, Thomas claimed monthly living expenses of $11,800.00. The SEC points out that Thomas has provided no evidence of his earnings such as W-2s, K-1s, 1099s or income tax returns, and that his statement of financial condition is not verified or reliable. The bank account records for 2016 showed that Thomas was spending more than he was allegedly earning. *Memorandum* (ECF No. 536), at pg. 9. The last tax return provided by Thomas, in 2010, showed that he paid $22,493.00 in

federal income tax and paid no Arizona income tax.[1] The SEC states that applying this same "rate of taxes," i.e., $22,493.00, to the $592,079.00 deposited in the bank accounts results in "annual disposable earnings of $569,586.00." The SEC argues that Thomas therefore has net disposable monthly earnings of $47,465.00 or net disposable weekly earnings of $11,038.00. *Id.* at pgs 9-10. Twenty-five percent of these weekly disposable earnings is $2,759.00 per week, or $11,866.00 per month ($2,759.00 X 4). Alternatively, the current federal minium wage is $7.25/hour. Thirty times that hourly wage is $217.50. Subtracting that amount from $11,038 would result in earnings of $10,820.00 per week or $43,280.00 per month ($10,820 x 4).[2] The SEC argues that the Court should therefore impose the lesser monthly installment payment under Section1673(a)(1) which is $11,866.00.

Although Defendant Thomas's assertion that he is financially surviving solely on "loans" that do not constitute income or earnings from self employment is not credible, the Court is not persuaded that all of the monies deposited in the limited liability company bank accounts constitute personal income or earnings to Thomas. The sources of the $592,079.00 deposited into the accounts in 2016 have not been identified. It appears reasonable that these funds could have been provided by third parties as "loans" or investments in the entities as to which the lenders or investors expect a return on their loan or investment, and which were not intended to be used by Thomas as his personal income. Although it appears that Mr. Thomas has liberally used funds from the bank accounts to pay his and his family's personal living expenses, the SEC has so far shown that "only" $103,711.07 was spent for such expenses in 2016. That leaves unaccounted the balance of $474,137.93 withdrawn from the accounts in 2016. Mr. Thomas indicates in his financial statement that on a monthly basis he has drawn $20,000.00 or more in a combination of "consulting fees" and "loans" from the accounts. *See Response* (ECF No. 539), *Exhibit 11.* Assuming for sake of argument that Mr. Thomas had gross annual income in 2016 of $240,000 or more, that would translate to taxable income in excess of $207,000.00 assuming he filed a joint tax return with his wife and claimed her and their children as dependents, and took the standard deductions.

---

[1] The SEC has not provided information regarding Defendant's taxable income as reported on his 2010 federal income tax return.

[2] The SEC arrived at a monthly amount of $46,526.00. In any event the amount derived under 15 U.S.C. 1673(a)(2) is substantially greater than that derived under § 1673(a)(2).

If that amount is used as Mr. Thomas's disposable income, then his weekly income is approximately $3,981.00 ($207,000.00 ÷ 52). Applying the calculation under 15 U.S.C. § 1673(a)(1) results in weekly earnings of approximately $995.00 or $3980.00 per month. The alternative amount under 15 U.S.C. § 1673(a)(2) is approximately $15,054.00 per month ($3,981.00 - $217.50 = $3763.50 X 4 = $15,054.00).

Based on the evidence presently before the Court, however, Mr. Thomas's disposable income can only be estimated. Mr. Thomas possesses the relevant information regarding his earnings or income. He has not provided either the SEC or the Court with verifiable and reliable information regarding his earnings or income. Given his current representations and past actions, Mr. Thomas's statements lack any significant degree of credibility. Mr. Thomas has paid nothing on the judgment entered against him nearly 11 years ago, despite having received substantial amounts of cash at various times over the years. Mr. Thomas previously agreed in 2014 to pay $2,000/month during 2015 and $3,000/month in 2016 to satisfy the judgment. He promptly violated his agreement and has paid nothing on the judgment, despite having access to significant cash which he has spent liberally, if not lavishly, on his and his family's personal living expenses.

## **CONCLUSION**

Based on the evidence presently before the Court, Mr. Thomas can pay, at minimum, $4,000.00 per month and more likely can pay at least $5,000.00 per month in installment payments on the judgment. The latter figure conservatively takes into account the lack of credibility and reliability in Mr. Thomas's statements and representations about his earnings and income which indicate that he has drawn at least $20,000.00 per month for support of himself and his family. Given his unaccounted for control over substantially greater funds in the limited liability company bank accounts, Mr. Thomas's actual monthly income or earnings in 2016 and 2017 may be considerably greater. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Securities and Exchange Commission's ("SEC") Motion to Establish a New Installment Payment Plan (ECF No. 531) is **granted** as follows:

1. Defendant Gary Thomas Vojtesak shall make installment payments of $5,000.00 per month in satisfaction of the judgment against him. His first payment of $5,000.00 shall be due on or before November 1, 2017 and he shall thereafter pay $5,000.00 on or before the first day of each month until the judgment is satisfied, or this order is modified.

2. Plaintiff may conduct further discovery in accordance with Rules 69, and 26-36 of the Federal Rules of Civil Procedure to determine Defendant's present disposable income or earnings, and whether he is able to pay a higher installment payment than ordered here. Plaintiff may file a motion to Defendant's monthly installment payments as it deems reasonable based on the results of further discovery and investigation.

3. Defendant Thomas may also seek modification and reduction of the installment payment order if he can demonstrate by competent, reliable evidence that he does not have sufficient disposable income to make the monthly installment payment ordered herein.

DATED this 23rd day of October, 2017.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge